UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAMES W. GAY,<br>　　　Plaintiff, | )<br>)<br>) |
| | ) |
| 　　　v. | )<br>) |
| | ) |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) |

C.A. No. 15-332-M-PAS

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff James W. Gay appeals the Social Security Administration's Acting Commissioner's denial of his application for disability insurance benefits. ECF No. 8. Mr. Gay's motion is DENIED in part and GRANTED in part. The Court DENIES Mr. Gay's motion to vacate the ALJ's decision, but GRANTS what the Court construes as a motion to vacate the Appeals Council's denial of review of the ALJ's decision. The Acting Commissioner's cross-motion to affirm (ECF No. 11) is similarly GRANTED in part and DENIED in part.

## I.　BACKGROUND

Mr. Gay filed for disability, alleging an onset date of June 5, 2012. ECF No. 5-2 at 20 (Tr. 19). After initial denials, he appeared before an Administrative Law Judge (ALJ), and was denied. *Id.* The Appeals Council denied his request for review, which made the ALJ's decision the final decision of the Acting Commissioner. ECF No. 5-2 at 2 (Tr. 1). Mr. Gay then filed this action with the Court.

## II.    FACTS

Mr. Gay was 39 years old at the alleged disability onset date. *Id.* at 31 (Tr. 30). He has at least a high school education. *Id.* at 32 (Tr. 31). He was previously employed as a landscaping foreman for ten years, and then worked as a machine operator for seven years. *Id.* at 42-43 (Tr. 41-42). He has not worked since June 2012. *Id.*

Mr. Gay attributes the onset of his symptoms to a May 1, 2012 incident, when his 4-year-old daughter accidentally kicked him between the shoulder blades while he was playing with her. ECF No. 5-9 at 11-12 (Tr. 295-96); ECF No. 5-23 at 15 (Tr. 590). After an MRI revealed abnormalities in his neck vertebrae, Dr. Sumit Das performed surgery on his neck, which involved completely removing some of the vertebrae and inserting a cage. ECF No. 5-2 at 25-26, 54 (Tr. 24-25, 53). The surgery revealed a significant infection in the actual bones of Mr. Gray's neck, which was aggressively treated with antibiotics. *Id.* at 26, 54 (Tr. 25, 53). Because of the infection, Dr. Das did not complete a "posterior decompression," and instead employed a "Halo fixation system" to keep Mr. Gay's neck stable. ECF No. 5-12 at 2 (Tr. 341). Mr. Gay wore the Halo device until it was removed two months later. *Id.;* ECF No. 5-16 at 20 (Tr. 402).

Since the removal of the Halo system, Mr. Gay has consistently complained of pain, even while his treatment providers noted that he was progressing well. On September 5, 2012, Dr. Das reported that Mr. Gay "continues to do relatively well," but also prescribed him Oxycodone and Valium for pain. ECF No. 5-17 at 3, 7-8 (Tr.

414, 418-19). On October 15, 2012, Dr. Das noted that all of Mr. Gay's "labs at this point are within normal limits," yet he is having "increased neck pain." ECF No. 5-18 at 3 (Tr. 434). On December 6, 2012, physician's assistant Christine Boyer, who works with Dr. Das at the Brain & Spine Neurological Institute, began her report by stating that Mr. Gay "is progressing along quite well," before noting that "he has had an increase in his neck pain." ECF No. 5-19 at 3 (Tr. 455). Ms. Boyer noted that Mr. Gay "is still finding himself getting extremely fatigued and having more pain by the end of the day." *Id.* On January 17, 2013, Ms. Boyer commented that Mr. Gay's cervical x-rays "appear stable," yet "his left upper extremity is still weak, and he is still getting a significant amount of posterior cervical pain." ECF No. 5-20 at 17 (Tr. 487). She also noted "increased complaints of some intermittent numbness into the left and right hands and arms." *Id.*

Mr. Gay had an MRI on February 12, 2013, which revealed "ventral breaking of the right cervical cord at the C4 level[, which] raises the possibility of a ventral dural tear in the location." ECF No. 5-21 at 3 (Tr. 508). A CT scan on the same date revealed "degenerative changes at the C2-C3 and C6-C7 levels." *Id.* at 7 (Tr. 512). The next day, Dr. Das observed that Mr. Gay was doing "relatively well," despite also noting that he had "some upper extremity numbness primarily in his hands," and was also "complaining of neck pain." ECF No. 5-22 at 11 (Tr. 559). On April 17, 2013, Dr. Das reiterated that Mr. Gay "has had some persistent neck pain," along with "numbness and tingling in both of his upper extremities as well as in his lower extremities." ECF No. 5-23 at 3 (Tr. 578). Dr. Das indicated that he "would like to

perform an EMG of both upper extremities." *Id.* at 4 (Tr. 579). On May 22, 2013, Dr. Das noted that Mr. Gay "continues to complain of neck pain," despite other indicators showing that he is healing. ECF No. 5-27 at 3 (Tr. 708). On July 17, 2013, Ms. Boyer noted that Mr. Gay "is still complaining of primarily neck pain and some shoulder pain," and "still complaining of some left arm weakness." *Id.* at 23 (Tr. 728). Ms. Boyer also noted that the EMG "does show evidence of a polyneuropathy at C4-5, C5-6, and C6-7 on the left." *Id.* at 24 (Tr. 729). On September 5, 2013, Ms. Boyer observed that Mr. Gay "is still complaining of neck pain that has become quite severe in nature at times." *Id.* at 34 (Tr. 739). She noted that he had "right hand swelling and tremors" and "numbness and tingling into his bilateral hands and feet." *Id.*

On January 14, 2014, Mr. Gay attended a hearing before the ALJ. He testified that he "can't stand for long periods of time. [His] feet go numb, [he] drop[s] stuff. [He] ha[s] limited range of mobility in [his] neck. [He is] in constant pain." ECF No. 5-2 at 43 (Tr. 42). He also testified that his hands go numb, he cannot really lift anything, and he has difficulty putting his hands above his head. *Id.* at 44 (Tr. 43). He stated that he has a hard time dealing with buttons and zippers, and has fallen a few times because of numbness in his feet. *Id.* at 50-51 (Tr. 49-50). He estimated that he can only bend over for 5-10 minutes, can walk for about 15-20 minutes before he has to take a break, can sit for 10-15 minutes before needing to move around, and could lift a maximum of 15-20 pounds. *Id.* at 44, 46 (Tr. 43, 45).

Medical Expert Stephen Kaplan, M.D., also testified at the hearing. He observed that Mr. Gay's "complaints have been consistent, [about] posterior neck pain

with significant pain, particular in the left upper extremity." *Id.* at 55 (Tr. 54). Dr. Kaplan had difficulty explaining the origins of Mr. Gay's complaints of "numbness down both arms and legs." *Id.* He also testified that there are no objective findings to explain Mr. Gay's numbness and difficulty using his hands and upper extremities. *Id.* at 59 (Tr. 58). He stated that objective findings only account for problems in Mr. Gay's left upper arm. *Id.*

Vocational Expert Kenneth R. Smith then testified that assuming an individual of Mr. Gay's age, education, and vocational background, and capable of performing at the light exertional level,[1] that individual would be precluded from Mr. Gay's past work, but would not be precluded from other unskilled work at the light and sedentary level. *Id.* at 63-64 (Tr. 62-63).

The ALJ issued a decision denying benefits. ECF No. 5-2 at 20, 33 (Tr. 19, 32). The ALJ found that Mr. Gay's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* at 25 (Tr. 24). She explained that Dr. Das' reports suggest that Mr. Gay has been improving, and that there is no objective basis to explain some of Mr. Gay's symptoms. *Id.* at 29 (Tr. 28). She also noted that "the record reflects improvement with activities of daily living that belies the claimant's allegations of disability,"

---

[1] Meaning occasional climbing of ladders, ropes, or scaffolds; balancing, kneeling, stooping, crouching, and crawling; no overhead reaching with the left arm and occasional overhead reaching with the dominant right arm; lifting and carrying with the left arm limited to 10 pounds; and avoidance of concentrated exposure to extreme cold, vibration, and unprotected heights and dangerous equipment.

pointing to improvements during the period from October 2012 to January 2013, and the limited activities, such as being "able to bathe and dress himself for the most part," which Mr. Gay reported he can still do. *Id.* The ALJ concluded that Mr. Gay does have a severe impairment, albeit one that does not meet or medically equal the requisite severity to automatically qualify for benefits, and that although his residual functional capacity does not permit him to perform the requirements of his past relevant work, it does permit him to perform other relevant work that exists in significant number in the national economy. *Id.* at 22, 24, 31-32 (Tr. 21, 23, 30-31).

Mr. Gay appealed the ALJ's decision to the Appeals Council, and submitted additional medical records. These records included a medical report dated March 12, 2014 from his pain management doctor at Brain & Spine Neurological Institute, Dr. Katherine Williams. Her assessment was that:

> Mr. James Gay continues to have severe pain which is significantly affecting his life. He is mostly homebound due to his pain. At this point we are trying to taper his pain medications down as tolerated. . . Mr. Gay certainly has significant pain associated with a very difficult surgical course associated with complications.

ECF No. 5-2 at 70 (Tr. 69). Mr. Gay also submitted to the Appeals Council the results of an MRI of his spine, dated April 5, 2014, which revealed a "[b]ulging disc L5/S1 contacting bilateral transiting L5 nerve roots," and "[m]inimal chronic anterior superior compression deformity T12. Endplate chronic degenerative change T12-L1." ECF 5-2 at 68 (Tr. 67).

The Appeals Council denied Mr. Gay's request to review the ALJ's decision. The Appeals Council stated that it considered the reports dated March through April

2014, but found that "[t]his new information is about a later time. Therefore it does not affect the decision about whether [Mr. Gay] w[as] disabled beginning on or before February 25, 2014." ECF 5-2 at 3 (Tr. 2). The Council advised Mr. Gay that he could file a new application alleging a disability onset date after February 25, 2014. *Id.* Mr. Gay advises the Court that he filed a new application for disability with an onset date of February 26, 2014, and was approved on or about April 5, 2016. ECF No. 12 at 1. Therefore, at issue is Mr. Gay's eligibility for disability payments from June 5, 2012 until February 25, 2014.

## III.   STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed *de novo,* "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). The determination of substantiality must be made upon an evaluation of the record as a whole. *Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez v. Sec'y*

*of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (citing *Richardson*, 402 U.S. at 399).

The Court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that he or she properly applied the law. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). The Court may also review the Appeals Council's decision to deny review of the ALJ's decision, when the Appeals Council "gives an egregiously mistaken ground for this action." *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001).

In making these determinations, "it is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be 'liberally applied.'" *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979)). "[T]he Social Security Act should be construed liberally in order to further its remedial purposes." *Slessinger v. Sec'y of Health & Human Servs.*, 835 F.2d 937, 943 (1st Cir. 1987) (citing *Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir. 1981). *See also Smirga v. Sec'y of Health & Human Servs.*, 607 F. Supp. 680, 685 (W.D. Pa. 1985) ("Where evidence has been presented and the case is close as it involves the application of the Social Security

Act, the balance should be cast in favor of, rather than against, coverage in order to fulfill the statute's broad and benefic[ ]ent objects.").

## IV.   ANALYSIS

Mr. Gay attacks the ALJ's decision on two grounds.  First, he argues that the ALJ failed to provide good reasons for rejecting the opinion of Mr. Gay's treating neurosurgeon, Dr. Sumit Das.  Second, he asserts that the ALJ's finding against Mr. Gay's credibility is not supported by substantial evidence.  In support for both grounds, Mr. Gay relies in part on evidence that was first submitted to the Appeals Council, and has never been before the ALJ.  The Court denies Mr. Gay's attacks on the ALJ's decision, but construes his arguments based on the new evidence as a motion to vacate the Appeals Council's denial of review, and grants that motion.

On the first ground, Mr. Gay's attack is without merit.  The ALJ did not reject Dr. Das' medical opinions; instead she relied on his reports throughout her decision. *See* ECF No. 5-2 at 25-27, 29-31 (Tr. 24-26, 28-30).  The portion that Mr. Gay objects to states:

> The treating neurosurgeon, Dr. Das, opined on TDI [temporary disability insurance] forms that the claimant was unable to return to work between June 2012 and January 2013 (citation omitted).  By stating that the claimant was unable to work, Dr. Das addresses the ultimate issue of disability, which is reserved for the Commissioner and the Administrative Law Judge here (20 CFR 404.1527; SSR's 96-2 and 96-5p).  Indeed, this assessment lacks a description of discrete functional limitations arising out of the claimant's impairments.  Thus, it is not afforded substantial probative value (20 CFR 404.1527; SSRs 96-6p and 06-03p).

*Id.* at 31-32 (Tr. 29-30).  Mr. Gay concedes that "the ALJ correctly states that the TDI forms completed by Dr. Das address the ultimate issue of disability, which is reserved

for the Commissioner," but finds fault with the sentence that "this assessment lacks a description of discrete functional limitations arising out of claimant's impairments." *Id.* ECF No. 8-1 at 13. That sentence accurately describes the TDI forms, which in Mr. Gay's own words "do not require a functional assessment but simply a statement as to whether or not the person can return to work." *Id.* Such bare bones conclusions on the ultimate issue, even from a treating physician, are not entitled to special significance. *See* 20 C.F.R. § 404.1527(d).

The ALJ did not reject any other relevant opinions from Dr. Das. In fact, the last report from Dr. Das that was before the ALJ, dated May 22, 2013, reflected a normal physical examination, and concluded that Mr. Gay should begin to wean off pain medication and come back to see him "one last time in three months." ECF No. 5-27 at 3-4 (Tr. 708-09). The Court finds that the ALJ did not reject any of Dr. Das' medical opinions, and that she gave appropriate reasons for rejecting his statements about the ultimate issue of disability on the TDI forms.

On the second ground, the ALJ's finding that Mr. Gay's subjective complaints were not credible is more concerning, especially in light of Mr. Gay's documented persistent complaints about pain throughout the alleged disability period. The record is entirely absent of any suggestion from any doctor or other medical provider that Mr. Gay might be exaggerating or misrepresenting his symptoms. However, at the hearing, the ALJ had the following exchange with the medical expert, Dr. Kaplan:

> ALJ: Is there a competent basis for the pain that he continues to complain of?
> ME: There really is not a -- from the objective changes, there was not -- in the objective findings, you really can't explain,

> and I'm sure this is why they were studying him, the
> numbness and difficulty that he has described using his
> hands and upper extremities.
>
> ALJ: There is not?
> ME: There is not.
> ALJ: Okay, what about the left hand? You mentioned the left
> had [ ] some true weakness?
> ME: Well, yeah, they see some radiculopathy, so the main
> problem, I think, would be the -- with the left upper arm.

ECF No. 5-2 at 59 (Tr. 58). This testimony provides sufficient evidence that "a reasonable mind might accept as adequate" that Mr. Gay's testimony about pain outside his left upper arm was exaggerated. *Richardson*, 402 U.S. at 401. Therefore, the Court concludes that the ALJ's finding is supported by substantial evidence.

One issue remains outstanding. In his motion, Mr. Gay several times attacks the ALJ's decision based on Dr. Williams' March 2014 report and Mr. Gay's April 2014 spine MRI results — evidence that was not before the ALJ when she rendered her decision. ECF No. 8-1 at 8, 10-11. These records are significant because they bolster Mr. Gay's credibility about his pain symptoms. Dr. Williams' report unequivocally states that "Mr. Gay continues to have severe pain which is significantly affecting his life," and the MRI reveals objective findings that may undercut Dr. Kaplan's testimony about the unexplainable nature of his pain symptoms. ECF No. 5-2 at 68-70 (Tr. 67-69).[2]

---

[2] Mr. Gay reports a successful subsequent application for disability, which was likely based at least in part on these new records. He reports this application was approved at the initial stage, with an onset date of February 26, 2014 — the day after the ALJ's unfavorable decision. ECF No. 12 at 1.

The Court may not review the ALJ's decision based on these records, because they were not presented to her. *See Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) ("[W]e may review the ALJ decision solely on the evidence presented to the ALJ."). However, the Court may vacate the Appeals Council's decision denying review of Mr. Gay's application "where [the Appeals Council] has given a mistaken reason for refusing further review." *Id.* The Court construes Mr. Gay's references to the March and April 2014 documents as a motion to review the Appeals Council's denial, and grants that motion.

The Appeals Council stated:

> We also looked at records from the Brain and Spine Neurological Institute and the Miriam Hospital dated March through April 2014. The Administrative Law Judge decided your case through February 25, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 25, 2014.

ECF No. 5-2 at 3. The Appeals Council's reason for ignoring this material evidence severely misinterprets the content and significance of the records. Despite being dated after the ALJ's decision, the March and April 2014 reports do reflect on Mr. Gay's condition during the disability period. Their date alone does not disqualify them from consideration. *See Ortiz Rosado ex rel. Rosado Guitierrez v. Barnhart*, 340 F. Supp. 2d 63, 65 (D. Mass. 2004) (vacating Appeals Council's denial of review in part because of new medical evidence dated after the ALJ's unfavorable decision).

There is absolutely nothing in the record suggesting that Mr. Gay had an additional injury, or that his condition worsened, at any point after February 25, 2014. Dr. Williams' report states that Mr. Gay "*continues* to have severe pain,"

connoting a persistence of his prior symptoms. ECF No. 5-2 at 70 (Tr. 69) (emphasis added). And Mr. Gay's first spine MRI may be sufficient evidence to explain his previously unexplained, but persistently alleged, pain symptoms extending beyond the left upper arm.

The Court concludes that the Appeals Council "gave an egregiously mistaken ground" for its denial, *Mills*, 244 F.3d at 5, when it stated that Mr. Gay's medical information dated March through April 2014 "is about a later time," and therefore "does not affect the decision about whether [he was] disabled beginning on or before February 25, 2014." ECF No. 5-2 at 3 (Tr. 2). That decision is vacated, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

On remand, the Appeals Council may find that even with the new evidence, Mr. Gay's case does not meet its criteria for review. Nonetheless, in making that determination, it must consider the March through April 2014 records as relevant to his condition during the alleged disability period. It would also be consistent with this opinion for the Commissioner to remand the case to the ALJ to reconsider her decision in light of the March through April 2014 records, which the ALJ never had the chance to review. *See Orben v. Barnhart*, 208 F. Supp. 2d 107, 114 (D.N.H. 2002).

## V.   CONCLUSION

The Court affirms the ALJ's decision in this case as it was based on substantial evidence in the record, but vacates the Appeals Council's denial of Mr. Gay's request for review based on material new evidence submitted to the Appeals Council. Mr.

Gay's Motion (ECF No. 8) is DENIED in part and GRANTED in part.  The Acting Commissioner's Motion to Affirm (ECF No. 11) is GRANTED in part and DENIED in part.  The case is remanded for further proceedings consistent with this order.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

June 13, 2016